IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Al-Mahdi Mohammed, | : | |
| | : | Case No. 1:02-CV-853 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING MOTION FOR |
| Penske Logistics, LLC, | : | SANCTIONS AND DISMISSING |
| | : | PLAINTIFF'S CASE WITH |
| Defendant. | : | PREJUDICE |
| | : | |

This matter is before the Court on Defendant's Motion for Sanctions (doc. 75), Plaintiff's Memorandum in Opposition to Defendant's Motion (doc. 77), and Defendant's Reply Memorandum (doc. 78). With this motion, Defendant asks the Court to impose a sanction of dismissal with prejudice pursuant to Fed. R. Civ. Proc. 37(c), along with any other sanction that the Court may deem appropriate. For the reasons that follow, the Court **GRANTS** Defendant's motion and **DISMISSES WITH PREJUDICE** Plaintiff's case.

**I.     BACKGROUND**

The procedural history of this lawsuit dates back to November 14, 2002, at which time Plaintiff Al-Mahdi Mohammed filed a Complaint (doc. 1) against Defendant Penske Logistics, LLC ("Penske"), Mohammed's then-current employer. Nearly two years later, after resigning from Penske, Mohammed filed an Amended Complaint (doc. 19), in which he alleged racial discrimination and retaliation in violation of Title VII. Penske moved for summary judgment as to all of Mohammed's claims on January 10, 2006, and Mohammed responded on February 13, 2006. In an Order (doc. 57) dated August 24, 2006, this Court denied summary judgment to Penske as to two of Mohammed's claims: (1) that Penske discriminated against him by denying

1

him proper seniority when he was reinstated after a layoff in 2002; and (2) that he was constructively discharged from Penske.[1]

The Court's decision to allow two claims to survive was based largely on the parties' separate submissions of two different versions of "Request for Withdrawal of Charge of Discrimination" forms, both purportedly from the Ohio Civil Rights Commission ("OCRC"), which created a genuine issue of material fact in dispute. The forms related to a charge of discrimination that Mohammed filed with the OCRC after he twice had applied for and been denied a position with Penske in 2000 and 2001. The parties ultimately negotiated a settlement to that dispute through the OCRC, by which Penske agreed to hire Mohammed. The parties later disputed in this lawsuit the terms of that earlier OCRC settlement as they related to seniority. Mohammed claimed that he only agreed to the settlement on the condition that Penske grant him full seniority rights from April 2000, the date he first applied for employment. Penske, on the other hand, maintained that the settlement agreement did not include a provision for seniority rights.

Discovery in this case has established that the OCRC file regarding Mohammed contained only one standard Request for Withdrawal of Charge of Discrimination form (hereinafter "First Withdrawal Form"). (Doc. 45-2.) The First Withdrawal Form was signed by Mohammed and Wade J. Cole, an OCRC field representative, on June 5, 2001, and by Frank X. Masterson, the OCRC Regional Director, on June 6, 2001. This form contains no language specific to Mohammed's case and no grant of retroactive seniority. Instead, it contains what appears to be boilerplate language pertaining to withdrawal of a charge:

---

[1] The Court need not repeat herein the underlying facts of Mohammed's claims as its February 13, 2006 Order (doc. 57) contains a detailed factual background of the dispute.

2

> You have requested a withdrawal of your dual filed charge from the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission (EEOC). In order to initiate such action, please furnish the information below. Since a request for withdrawal is subject to approval by both commissions, your request will be considered and acted upon when received. Please note that the Commissions are still prepared to proceed with your case if you so desire.
>
> * * * *
>
> I am aware that OCRC and EEOC protect my right to file a charge and have been advised that it is unlawful for any person covered by ORC-4112 or laws administered by EEOC to threaten, intimidate or harass me because I have filed a charge. I have not been coerced into requesting this withdrawal. I request the withdrawal of my charge because the issues of my charge have been resolved. I no longer wish to pursue my charge with the Ohio Civil Rights Commission or with the Equal Employment Opportunity Commission.

Id. In addition to this being the form included in Penske's official OCRC file, this is also the form that OCRC sent to Penske in the normal course of processing and closing Mohammed's initial charge. According to Penske, it received no other withdrawal forms and was unaware that others may have existed. In fact, Penske points out that when Mohammed was questioned about the First Withdrawal Form during his July 22, 2003 and December 7, 2005 depositions, he identified and admitted to signing the document. Neither Plaintiff nor his counsel made any mention of an alternative withdrawal form at either deposition. Nor did they question the authenticity of the First Withdrawal Form, nor suggest that the parties had agreed to alternative language regarding seniority.

Penske first learned of the possible existence of a second withdrawal of charge form (hereinafter "Second Withdrawal Form") (doc. 42-3; doc. 50-2 ex. 1) when Mohammed introduced an alternative form in response to Penske's summary judgment motion. The Second Withdrawal Form is similar in some respects to the First Withdrawal Form, containing some of

3

the same boilerplate language, and the same apparent signatures and dates.  Importantly, the last paragraph in the Second Withdrawal Form is modified to contain a grant of seniority as follows:

> I am aware that OCRC and EEOC protect my right to file a charge and have been advised that it is unlawful for any person covered by ORC-4112 or laws administered by EEOC to threaten, intimidate or harass me because I have filed a charge.  I have not been coerced into requesting this withdrawal.  I request the withdrawal of my charge because:
>
> *Penske Logistics and I have agreed that once they place me on the Road-Board in which [sic] the position I first applied and with my proper seniority, I will withdrawal [sic] my charge.*  I no longer wish to pursue my charge with the Ohio Civil Rights Commission or with the Equal Employment Opportunity Commission.

(Id. (emphasis added).)  Additionally, formatting is different in the Second Withdrawal Form, including the layout of the signature and date lines.  Given the timing of Plaintiff's production of the Second Withdrawal form, the Court was somewhat suspicious about the authenticity of the form.  Nonetheless, the Court decided that the form created a question of fact for a jury, thus precluding summary judgment as to Mohammed's discrimination claim.

On August 24, 2006, the same day that this Court issued its Order granting in part and denying in part summary judgment to Penske, Mohammed produced to Penske yet another withdrawal of charge form (hereinafter "Third Withdrawal Form") (doc. 58-3) that he claimed to have just discovered.  The Third Withdrawal Form closely resembles the First Withdrawal Form except that: (1) whereas Wade J. Cole signed the other two forms as a witness, the third form bears the signature of another individual; and (2) while all three forms are signed by Regional Director Frank Masterson, his signature is dated June 5, 2001 on the Third Withdrawal Form rather than June 6, 2001, as it is dated on the First and Second Withdrawal Forms.  (Id.)  Like the

4

First Withdrawal Form, the Third Withdrawal Form contains no language pertaining to a specific agreement between Mohammed and Penske and no grant of retroactive seniority.

Several months later, Penske learned that Mohammed had filed a second lawsuit in the Southern District of Ohio against another employer, Mohammed v. Mail Contractors of America, Case No. 1:04-cv-715, in which he had produced similarly suspect documents. Just as occurred in the instant case, Mohammed produced a previously undisclosed document in opposition to the defendant's motion for summary judgment in Mail Contractors of America. The document was purportedly issued by the Equal Employment Opportunity Commission (EEOC), but did not appear in the EEOC's official files. Magistrate Judge Timothy S. Black issued an order granting summary judgment in favor of the Mail Contractors of America and against Mohammed in Case No. 1:04-cv-715. Magistrate Judge Black explicitly found in the Order that Mohammed had produced a fake EEOC document to support his opposition to summary judgment:

> Accordingly, what is patently obvious in this case is that Plaintiff's Exhibit E, his primary document submitted to this Court in an attempt to establish pretext and avoid summary judgment, is a fake document. No reasonable person could agree with Plaintiff's version of the facts regarding his Exhibit E.
>
> Plaintiff (or someone on his behalf) altered the original July 21, 2004 letter, the version contained in the certified copy of the EEOC file, and created Exhibit E, a fake document, in an attempt to prove Plaintiff's case. Such fraud and trickery is unconscionable. It undermines the very purpose of our judicial system, and it wastes the time and resources of the Court and the opposing party.

(Mohammed v. Mail Contractors of America, Case No. 1:04-cv-715, doc. 60 p. 6 (S.D. Ohio Jan. 19, 2007)).

On December 13, 2006, Penske filed a Motion Pursuant to Fed. R. Civ. P. 56(g) (doc. 63) informing the Court of Mohammed's apparent penchant for uncovering key documents at the summary judgment stage and suggesting that Mohammed may have perpetrated a fraud on the

5

Court.  The Court held a final pretrial conference the following day, at which time the Court addressed Penske's allegations and inquired into the nature and production of the Second and Third Withdrawal Forms.  Rather than assuaging the Court's concerns about the authenticity of the Second Withdrawal Form, the production of which was integral to the Court's decision to deny summary judgment to Penske on Mohammed's discrimination claim, the conference instead heightened the Court's suspicions.

During discussions between the parties and the Court, Mohammed or his counsel revealed that they had in their possession at the conference an additional withdrawal form (hereinafter "Fourth Withdrawal Form") (doc. 75-8) that appeared to be an original copy (as opposed to a photocopy).  The Fourth Withdrawal Form is almost identical to the First Withdrawal Form.  It contains the same boilerplate withdrawal language with no grant of retroactive seniority.  It appears to be signed by the same parties on the same dates as the First Withdrawal Form except for (1) slightly different handwriting on the Masterson signature, (2) the addition of what appear to be initials next to the Masterson signature, and (3) the date written by Masterson appearing in a different location on the "Date" line.

Subsequent to this conference, Mohammed's counsel, Kenneth W. Scott moved to withdraw as counsel.  (Doc. 66.)  The Court granted the motion and permitted Scott to withdraw as counsel.  (Doc. 68.)

On February 12, 2007, Mohammed submitted an affidavit of Wade J. Cole in an attempt to quell the Court's suspicions about the existence of four OCRC withdrawal forms, and particularly the Second Withdrawal Form produced to support Mohammed's opposition to summary judgment.  (Doc. 73-2.)  Mr. Cole averred that there was only one original withdrawal

form and that all copies should have been destroyed. (Id. ¶ 7.) Mr. Cole also mentions that he had "revise[d] the withdrawal charge," which he implies became the version of the form that should have been in the OCRC file. (Id.) Cole in his first affidavit did not discuss whether he had prepared an initial withdrawal form or what language was contained in either the initial withdrawal or in the revised charge form.

On February 27, 2007, Penske filed the pending motion for sanctions pursuant to Fed. R. Civ. P. 37(c). The Court indicated to the parties at a conference held the following day that it was inclined to grant the motions for sanctions and dismiss the case. Mohammed later filed his opposition to the sanctions motion. In a second affidavit of Wade J. Cole, submitted to oppose the motion, Mr. Cole stated explicitly that he had prepared an initial withdrawal form that did not contain a grant of seniority that was signed by Mr. Mohammed, but that he then revised the form to include a seniority provision when Mohammed pointed out the omission to him. (Doc. 77-2 ¶ 2.) Mr. Cole does not state in this second affidavit what happened to the initial withdrawal form nor does he explain why the OCRC official file does not contain a withdrawal form with the seniority language he described. (Id.)

## II. LEGAL STANDARDS FOR MOTION FOR SANCTIONS

Federal courts have "the inherent power" to sanction a party "upon proof that a fraud has been perpetrated upon the court." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). This inherent power includes the authority to impose the "particularly severe sanction" of the dismissal of a lawsuit. Id.; Youn v. Track, Inc., No. C-1-95-192, 2003 WL 23412985, *3 (S.D. Ohio Oct. 3, 2003). "A court should only use its inherent power to dismiss in such a situation if

the misrepresentations were clearly established and were particularly egregious." Youn, 2003 WL 23412985 at *3.

Fed. R. Civ. P. 37 also provides for sanctions for failure to disclose information that should have been disclosed pursuant to Fed. R. Civ. P. 26(a) and (e). Appropriate sanctions include the payment of attorney fees, the striking of pleadings, and even dismissal of a claim or claims. Fed. R. Civ. P. 37(b) and (c). The Sixth Circuit has applied the following four-factor test in determining whether outright dismissal should be imposed as a discovery sanction:

> (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

Harmon v. CSX Transp., Inc., 110 F.3d 364, 366-67 (6th Cir. 1997) (internal quotations and citation omitted). The factors are examined more strictly when the fault for the discovery violations lies solely with a party's attorney as opposed to with the party himself. Id. at 367-68.

**III. ANALYSIS**

The issues before the Court are whether Mohammed manipulated the discovery process and committed a fraud upon the Court by the untimely "production" of a fabricated OCRC withdrawal form, and, if so, what sanctions should be imposed. The Court answers the first question in the affirmative and will impose the severe sanction of the dismissal of this action.

Mohammed contends that he signed the First Withdrawal Form without noticing that it did not include language regarding seniority and then asked the OCRC representative, Wade Cole, to draw up a revised withdrawal form with the seniority language. In support, Mohammed presents the first and second affidavits of Cole in which Cole partially supports Mohammed's

version of events.  (Doc. 73-2 ¶ 7; Doc. 77-2 ¶ 2.)  However, neither Cole nor Mohammed offer any explanation as to (1) why the Second Withdrawal form was not included in his official OCRC file, (2) why the Second Withdrawal Form has a different format and layout than the First, Third, and Fourth Withdrawal Forms, which all have identical formats or layouts, and (3) why a copy of it was not timely produced to Penske.  Regarding the second discrepancy, there would have been no reason for Cole to alter the form layout in the way it was presented in the Second Withdrawal Form in order to add a new paragraph with a grant of seniority.  Mohammed also fails to account for the existence of the Third and Fourth Withdrawal Forms, which do not contain a grant of retroactive seniority to Mohammed, or for his failure to produce those forms in a timely manner.

     Cole's affidavit supporting Mohammed's story that he signed two withdrawal forms, an initial form without seniority language and a revised form with seniority language, is outweighed by the discrepancies stated above that Mohammed does not account for and by Mohammed's own conflicting testimony and representations to this Court.  Mohammed testified at his first deposition taken on July 22, 2003 that he had signed the First Withdrawal Form, without the seniority language, and that there was "nothing in writing" as part of his settlement with Penske that guaranteed him retroactive seniority.  (Mohammed Dep. vol. I at 80.)   Mohammed further testified that he understood that the Union would have had to be involved in any agreement whereby Mohammed would have been given retroactive seniority.  (Id. at 82.)  Mohammed did not testify at either his first deposition, or at a follow-up deposition taken on December 7, 2005, that he had signed a second or revised withdrawal form containing seniority language.  Nor did Mohammed produce the Second Withdrawal Form during discovery.  This despite the fact that

9

Mohammed would later represent to the Court that he received the Second Withdrawal Form from the OCRC via postal delivery on or about July 21, 2001, years before his deposition was taken.  (Doc. 59 p. 4.)  It came as a great surprise to Penske, therefore, when Mohammed first presented the Second Withdrawal Form as an exhibit opposing the summary judgment motion.  It was only during briefing on summary judgment that Mohammed first told his story about signing two withdrawal forms, an initial and then the revised.  (Doc. 50-2 ¶ 4.)

The Court finds that Mohammed has acted wilfully and in bad faith in attempting to mislead Penske and the Court by filing a fabricated OCRC document, the Second Withdrawal Form, and by failing to timely produce other versions of the withdrawal form, the Third and Fourth Withdrawal Forms, in his possession.  Chambers, 501 U.S. at 44 (dismissal warranted for fraud upon the Court); see also Fed. R. Civ. P. 37; Harmon, 110 F.3d at 366-67 (standard for Rule 37 dismissal).  The Court's finding is based on the facts discussed in the preceding paragraphs and by Mohammed's similar contemptible conduct in Mohammed v. Mail Contractors of America, Case No. 1:04-cv-715.  Penske clearly was prejudiced by Mohammed's conduct as the Court initially denied summary judgment to Penske primarily on the basis of the purported question of fact raised by the Second Withdrawal Form and by the fact that it has had to continue to litigate this matter for many additional months because of Mohammed's machinations.  See Harmon, 110 F.3d at 366-67 (second and fourth dismissal factor).  Mohammed has had ample opportunity since the summary judgment briefing and beyond to explain why he was in the possession of multiple versions of the withdrawal form, and yet failed to timely produce them, since summary judgment briefing.  He has failed to do so to the Court's satisfaction.  See id. (third dismissal factor).  Because the Court has concluded that Mohammed

wilfully misled the Court and wilfully sabotaged the discovery processes, dismissal of this action is warranted.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Sanctions (Fed. R. Civ. Proc. 37(c)) (doc. 75) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

   s/Susan J. Dlott
Susan J. Dlott
United States District Judge